UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

**FILED**

2005 SEP 14 P 2: 19

U.S. DISTRICT COURT
BRIDGEPORT, CONN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR. NO. 3:00CR227(SRU) |
| VS. | : | |
| EDWARD ESTRADA et al. | : | SEPTEMBER 13, 2005 |

## MEMORANDUM IN SUPPORT OF
## RE-SENTENCING PURSUANT TO CROSBY REMAND

In June, 2001, Defendant Edward Estrada was charged in two counts of the 16-count Third Superceding Indictment in the above case, Count Twelve, Conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. Sections 841 and 846 ("the heroin conspiracy") and Count Fourteen, participation in a Continuing Criminal Enterprise in violation of 21 U.S.C. Section 848. Jury selection, initially scheduled for the morning of September 11, 2001, was conducted on February 7, 2002. The trial of the Defendant and five co-defendants began March 4, 2002. At the close of its case in chief, the government moved to dismiss the Continuing Criminal Enterprise count. The motion was granted. On April 2, 2002, the Defendant was convicted by a jury of Count 12 of the Indictment. The jury found, and indicated on its verdict form, that his involvement in the heroin conspiracy

1

involved 1,000 grams or more of heroin. On September 9, 2002 the Defendant was sentenced to a term of life without release.

Since the date of his sentencing, applicable law has changed swiftly. The United States Supreme Court has decided <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004), <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 125 S. Ct. 738 (2005), making the Sentencing Guidelines no longer mandatory, but advisory. The Second Circuit has decided <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), <u>United States v. Gonzalez</u>, Docket No. 03-1326 (2d Cir. 2005), and <u>United States v. Cordoba-Murgas</u>, Docket No. 04-3131-cr (L) (2d Cir. Sep. 7, 2005), the most recent case recognizing "the addition of a drug quantity element to a Section 841(a) offense to result in a different criminal charge from the same offense pleaded without regard to quantity."

## DRUG QUANTITY

The Indictment charged the Defendant with conspiracy "to possess with intent to distribute and to distribute 1,000 grams or more of a mixture and substance containing a detectable amount of heroin." Using the verdict form drafted by the government and adopted by the court, the jury determined the Defendant was guilty of conspiracy to possess with intent to distribute, and to distribute 1,000 grams or more of heroin. According to the United States Sentencing Guidelines, Section 2D1.1(c)(4) the base offense level for sentencing guideline purposes is Level 32. In the

PSR, the Probation Officer assigned a base offense level of 38 for participation in a drug conspiracy involving the distribution of more than 30 kilograms of heroin. (PSR par. 39). Based on its own fact finding and that of the Probation Officer, not the jury, the trial judge increased the Defendant's base offense level to 38. Such a judicial determination is now clearly erroneous under <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), <u>Blakely</u>, <u>Booker</u>, <u>Gonzalez</u> , and <u>Cordoba-Murgas</u>.

The Second Circuit has recently confirmed that, "[we have] recognized the addition of a drug quantity element to a Section 841(a) offense to result in a different criminal charge from the same offense pleaded without regard to quantity." <u>United States v. Cordoba-Murgas</u>, <u>supra</u>, citing <u>United States v. Gonzalez</u>, No. 03-1356, 2005 U.S. App. LEXUS 17961, at *31 (2d Cir. Aug. 22, 2005). Defendant Cordoba-Murgas was charged with distributing an unspecified amount of cocaine. He plead guilty to distribution of 15 to 50 kilograms of cocaine for which he was sentenced to 262 months, in excess of the 240 month maximum under Sec. 841(b)(1)(C)which applies to unspecified quantities. The Second Circuit relied on <u>Apprendi</u> and its own decision in <u>United States v. Thomas</u>, 274 F.3d 655 (2d Cir. 2001) which held that "if the type and quantity of drugs involved in a charged crime may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs, then the type and quantity of drugs is an element of the offense that must be charged in the indictment and submitted to the jury." <u>Thomas</u> at 660.

In the instant case, the Indictment charged 1,000 grams "or more" of heroin. Here, "or more" represents an indeterminate quantity, which was never charged in the indictment or found by the jury. The Probation Officer and the Court decided that the heroin quantity involved was 30 kilograms or more. Such a determination cannot stand under <u>Apprendi</u>, <u>Thomas</u>, <u>Gonzalez</u>, and <u>Cordoba-Murgas</u>. The Defendant should be re-sentenced, using a base offense level of 32, the correct level for the 1,000 grams found by the jury.

## ENHANCEMENTS FOR ROLE IN THE OFFENSE AND USE OF A MINOR

Based on the probation officer's conclusions in the PreSentence Report ("PSR"), the trial court imposed a 3-level enhancement for the Defendant's role in the offense, pursuant to U.S.S.G. Sec. 3B1.1(b) (PSR par. 31), and a 2-level enhancement for use of a minor in a criminal act, pursuant to U.S.S.G. Sec. 3B1.4, (PSR par. 35). At sentencing, the court stated, "*I* (emphasis added) find that the evidence introduced at trial proves the facts necessary and sufficient for the three level enhancement under 3B1.1 (for role)" (9/9/02 Tr. 21); "I agree that the two level adjustment (for use of a minor) is warranted in this case." (9/9/02 Tr. 23)

Neither enhancement was submitted to the jury. The jury was never asked what role the Defendant played in the heroin conspiracy. It was never asked whether the Defendant had employed a minor. There was never any finding by a jury, beyond a reasonable doubt, regarding those factors. The Defendant's enhancements are

4

unconstitutional under the holding of <u>Blakely</u>. They are now unconstitutional under <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), <u>United States v. Fanfan</u>, 125 S.Ct. 738 (2005), and <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), as well.

## FIREARMS ENHANCEMENT

The defendant understands that under a strict reading of <u>Apprendi</u> and its progeny he has conceded the firearms enhancement. However, he believes this factor should not be counted for purposes of re-sentencing. Following the advice of counsel, the Defendant did not contest the Probation Officer's finding that "a 2-level increase is warranted pursuant to U.S.S.G. Sec. 2D1.1(b)(1)because the defendant possessed firearms in connection with the instant offense." (PSR par. 40). Then-existing law, did not require a jury finding that the firearms enhancement had been proven beyond a reasonable doubt. Counsel and the Defendant believed that conceding the enhancement would lend credibility to their other sentencing arguments. Under current law, neither would waive the jury's obligation to make that finding. This issue is not a matter of deciding, in hind-sight, that a tactical error was made, but is an analysis under current law.

## CRIMINAL HISTORY COMPUTATION

The PSR improperly characterizes two of the Defendant's prior offenses as "crimes of violence." Both involved possession of a weapon in an institution. Both

occurred when he was 21 years old. In each case he had a metal "shank" for his own protection while in Connecticut state prisons. (PSR. Pars. 52 and 53) Neither meets fits the definition of a crime of violence under U.S.S.G. Sec. 4B1.2(a) Application n.1. There is no indication that either offense "had as an element the use, attempted use, or threatened use of physical force against another person." It is particularly instructive that Application n.1 specifically says "Crime of Violence" does not include the offense of possession of a firearm by a felon, except under special circumstances.

Since neither of the weapons charges should be counted as a "Crime of Violence, the Defendant should not be categorized as a Career Offender. His revised Criminal History Category should be Category V.

## DRUG ADDICTION

Throughout the trial, government witnesses testified about the Defendant's heroin addiction. They said that, because of the addiction, he stole heroin from his brother's drug organization. He was tolerated only because his brother Frankie was feared by everyone else. Government witness Nelson Carrasquillo testified the Defendant was so sick from his heroin habit that Carrasquillo bought illegal methadone on the street in downtown Bridgeport to relieve the Defendant's sickness. The PSR noted that the Defendant was "...at times handicapped by his severe addiction to heroin." (PSR, par. 90).

During his 2002 sentencing, the Defendant moved for downward departure under U.S.S.G. Sec. 5K2.0, 18 U.S.C. Sec. 3553(b) and <u>United States v. Koon</u>, 518 U.S. 81, 1996. He urged the court to downwardly depart based upon his extreme heroin addiction. At sentencing, the court noted "there was very clear testimony that your drug addiction affected your behavior, especially in the period following March, 2000, but the guidelines discourage that factor..." (9/9/02 Tr. 35)

At the time of sentencing in September, 2002, the Guidelines prohibited a downward departure based upon drug abuse. "Drug or alcohol abuse is not a reason for a downward departure." U.S.S.G. Sec. 5K2.0(d)(1). At that time, the Guidelines were mandatory. Since the <u>Booker</u> decision of January 12, 2005, the Guidelines have been discretionary. Surely the extreme level of the Defendant's heroin addiction, while not excusing his criminal behavior, qualifies for a downward departure.

## MEDICAL CONDITION

The PSR noted that the Defendant "suffered from some dizziness and chest pains since his detention in this case and subsequent testing has revealed that he has an enlarged heart." (PSR par. 72) After his sentencing, the Defendant's heart problems increased. He underwent open heart surgery for an aortic valve replacement on September 17, 2004, at the Williamsport Hospital and Medical Center while incarcerated at Lewisberg Penitentiary. (See ATTACHMENT A) Under U.S.S.G. Sec. 5H1.4, although physical condition is not ordinarily relevant in

determining whether a downward departure may be warranted, it is a permissible consideration. The cost to the Bureau of Prisons of potential repeated surgery or other cardiac treatment may be a reason to downwardly depart and save the BOP from incurring foreseeable medical costs if the Defendant were to remain incarcerated for a lifetime.

## SENTENCING ON REMAND

Since January 5, 2005, the sentencing guidelines have not been mandatory. although they are advisory and must be considered by sentencing courts. Under Booker and Crosby, the factors set forth in 18 U.S.C. 3553(a) are to be applied in order to impose a sentence "sufficient but not greater than necessary" to achieve the purposes of sentencing considering:

> (1) The nature and circumstances of the offense,
>    the history and characteristics of the Defendant;
> (2) the need for the sentence imposed to:
>    (A) reflect the seriousness of the crime, to promote
>        respect for the law, and to promote jus punishment
>        for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with educational or vocational training,
>        medical care, or other correctional treatment.
> (3) The kinds of sentences available;
> (4) The sentencing guidelines and (5) policy statements;
> (6) The need to avoid of unwarranted sentencing disparity; and
> (7) The need for restitution to victims.

The Second Circuit noted in Crosby that, because sentencing guidelines are no

8

longer mandatory, the district courts have the authority to impose non-guideline sentences. <u>Crosby</u> at 112.

The Defendant urges this Court to impose a non-guideline sentence when the Defendant is re-sentenced pursuant to the <u>Crosby</u> remand. He should be sentenced within the statutory sentencing range of 10 years to life pursuant to 21 U.S.C Sec. 841(b)(1)(A) for the crime of which he has been convicted by the jury.

## LIFE WITHOUT RELEASE IS HARSHER THAN APPROPRIATE

The facts of this case do not call for a sentence of life without release. Such a sentence should be reserved for the most heinous criminals. The Defendant, despite his participation in the drug organization and his lengthy criminal record, was not convicted of with crimes of individualized physical violence such as murder or kidnapping. The court's job is to create a sentence which is sufficient but not greater than necessary in order to meet the purposes of sentencing for specific deterrence, general deterrence, incapacitation, and rehabilitation. Under an advisory scheme of sentencing pursuant to <u>Booker</u>, <u>supra</u>, a sentence of life without release is harsher than necessary.

The Defendant took responsibility for his actions during his sentencing hearing on September 9, 2005. He apologized to the victims of his crimes of heroin distribution and to their families. He apologized to his own family and friends. He

explained that his mind had been clouded by drug use during the years of the conspiracy. He apologized for the mistakes he made.

Since his arrival at the Federal Penitentiary at Lewisberg, he has taken college level business courses through the Newport Business Institute in Williamsport, PA. (See ATTACHMENT B). He has taken a wide variety of courses at Lewisberg, giving attention to them in a way he was never previously able to give his studies during the years of his childhood or his drug clouded later years. (See ATTACHMENT C)  He has tried to make the best of a life in a maximum security penitentiary and has begun rehabilitation in a way that he has never been able to achieve before.

## C O N C L U S I O N

For all the above reasons, the Defendant requests that he be re-sentenced within the range of 10 years to life in accordance with the presently operative law.

Respectfully submitted,
DEFENDANT, EDWARD ESTRADA,


BY _Margaret P. Levy_
MARGARET P. LEVY
Federal Bar No. ct00045
His Attorney
21 Oak Street
Hartford, CT  06106-8001
(860) 525-9119

10

<u>**C E R T I F I C A T I O N**</u>

This is to certify that a copy of the foregoing was mailed, postage prepaid, or

was hand-delivered, this day, to:

**Hon. Stephen R. Underhill**
**United States District Court**
**915 Lafayette Boulevard**
**Bridgeport, CT 06604**

**Alex V. Hernandez**
**Alina M. Reynolds**
**Assistant United States Attorneys**
**915 Lafayette Boulevard**
**Bridgeport, CT 06604**

**Edward Estrada**
**Reg. No. 60392-053**
**FDC-Wyatt**
**950 High Street**
**Central Falls, RI 02863**

*Margaret P. Levy*
MARGARET P. LEVY