UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2006 MAY -9  A II: 52

U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CR. NO. 3:00CR227(SRU) |
| VS. | : | |
| EDWARD ESTRADA et al. | : | MAY 8, 2006 |

### DEFENDANT EDWARD ESTRADA'S
### SUPPLEMENTAL SENTENCING MEMORANDUM ON REMAND

Defendant Edward Estrada, by and through his undersigned counsel, submits this supplemental memorandum in support of his re-sentencing pursuant to the remand in accordance with United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). He respectfully requests that the court re-sentence him to a non-Guidelines sentence as permitted by United States v. Booker and United States v. Fanfan, 125 S. Ct. 738 (2005) and Crosby.

In June, 2001, the Defendant was arrested on the Third Superseding Indictment in the above case. He was charged in two counts of the 16-count indictment: Count Twelve, Conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. Sections 841 and 846 ("the heroin conspiracy") and Count Fourteen, participation in a Continuing Criminal Enterprise in violation of 21 U.S.C. Section 848. The trial of the Defendant and five co-defendants began March 4, 2002.

1

At the close of its case in chief, the government moved to dismiss the Continuing Criminal Enterprise count. The motion was granted. On April 2, 2002, the Defendant was convicted by the jury of Count Twelve of the Indictment. The jury explicitly found, and indicated on its verdict form, that his involvement in the heroin conspiracy involved 1,000 grams or more of heroin. On September 9, 2002, the Defendant was sentenced to a term of life without release.

### I.    POST-<u>BOOKER</u> SENTENCING PRINCIPLES
### <u>APPLY TO THE CROSBY REMAND</u>

At the time of his sentencing, the United States Sentencing Guidelines (U.S.S.G.) were mandatory. The law has since changed. "Now, with the mandatory duty to apply the Guidelines excised, the duty imposed by section 3553(a) to "consider" numerous factors acquires new significance." <u>Crosby</u>, at 18. On August 23, 2005, this court stated, "I have determined that had the Defendant's Sentencing Guidelines been advisory, I would have imposed a non-trivially different sentence on Edward Estrada." (ATTACHMENT A, ORDER, filed 8/23/05). If the Defendant's sentencing had taken place after the decisions in <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 125 S. Ct. 738 (2005), he should not have received a sentence of life without the possibility of release. In light of <u>Booker</u>, <u>Fanfan</u>, <u>Crosby</u>, and their progeny, a different sentence is appropriate.

The Defendant incorporates by reference Defendant Edward Estrada's Objections to PSI dated August 15, 2002; Defendant Edward Estrada's Sentencing

Memorandum dated August 28, 2002; and his Memorandum in Support of Re-Sentencing Pursuant to Crosby Remand, dated September 13, 2005.

### A.    SENTENCING CHANGES POST-BOOKER

The defendant submits that under sentencing law developed since his sentencing on September 9, 2002, he should be sentenced to a non-guideline sentence, significantly shorter than the pre-Booker sentence he is currently serving. A major factor in the different sentence calculated under the Guidelines relates to drug quantity. The jury found, beyond a reasonable doubt, that the Defendant participated in the heroin distribution conspiracy responsible for distribution of at least one kilogram of a mixture and substance containing heroin, resulting in a Base Level Offense of 32. The probation officer and court found the conspiracy responsible for at least 30 kilograms or more of Heroin, infra. For reasons explained below (See, infra, Drug Quantity), the Defendant maintains level 32 is the correct base offense level. Since the date of his sentencing, applicable law has changed swiftly. The United States Supreme Court has decided Blakely v. Washington, 124 S.Ct. 2531 (2004), United States v. Booker and United States v. Fanfan, 125 S. Ct. 738 (2005), making the Sentencing Guidelines no longer mandatory, but advisory. The Second Circuit has decided United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), United States v. Gonzalez, Docket No. 03-1326 (2d Cir. 2005), and United States v. Cordoba-Murgas, Docket No. 04-3131-cr (L) (2d Cir. Sep. 7, 2005), recognizing "the addition of a drug

quantity element to a Section 841(a) offense to result in a different criminal charge from the same offense pleaded without regard to quantity."

In addition, the United States Supreme Court's decisions in <u>Booker</u> and <u>Fanfan</u> make it clear that the three point enhancement for Role in the Offense and the two point enhancement for Use of Minors, should have been submitted to the jury. Instead, following the applicable law in 2002, both were determined by the court. During the original sentencing hearing, the court said, "I find the evidence introduced at trial proves the facts necessary and sufficient for the three level enhancement under 3b1.1b (U.S.S.G. Sec. 3B1.1(b) - Role in the Offense)" 09/09/02 Tr. 21. It also stated, "I agree that the two level adjustment is warranted in this case" for Use of Minors under 1b1.3 (U.S.S.G. Sec. 1B1.3 – Relevant Conduct) 09/09/02 Tr. 23. Those determinations violated the Defendant's Sixth Amendment right to trial by jury. Subtracting the erroneous 5-point enhancements from the correct base offense level of 32 yields an Offense Level of 27, corresponding to a Guideline range of 130 to 162 months, based upon Criminal History Category V1. The Defendant contends his Criminal History Category should be V (See, <u>infra</u>, Criminal History Computation). yielding a Guidelines range of 120-150 months.

The Defendant is aware that the "remedial" decision in <u>Booker</u> may appear to take back with its left hand what the "constitutional decision" gave with its right. "…[T]he traditional authority of a sentencing judge to find all facts *relevant* to

sentencing will encounter no Sixth Amendment objection." (*emphasis added*) <u>United States v. Santiago</u>, 413 F. Supp. 307 (2006) citing <u>Crosby</u>, 397 F.3d at 112, construing <u>Booker</u>. The Defendant submits that post-conviction activity at Lewisberg was not a part of the activities of which he was convicted and is not relevant to his sentence for a drug conspiracy in the P.T. Barnum housing project years before.

By permitting the sentencing court to make determinations for purposes of sentencing which have not been found by the jury, <u>Booker</u> and <u>Fanfan</u> have sometimes been interpreted to sound generous but provide little relief for defendants. "It makes absolutely no sense to conclude that the Sixth Amendment is violated whenever facts essential to sentencing have been determined by a judge rather than a jury, <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and also conclude that the fruits of the jury's efforts can be ignored with impunity by the judge in sentencing."

> To determine [the Defendant's] sentence, the Court must look not only to the explicit text of the Sentencing Guidelines, but also must carefully evaluate their meaning and the resulting sentence in the light of the purposes of sentencing under 18 U.S.C. Sec. 3553(a). See Booker 543 U.S. 220, 160 L.Ed.2d 621, 122S.Ct. 738 (2005). That analysis, however, is more complicated than may appear at first glance. It necessarily raises other questions, such as the standard of proof for evaluating facts post-Booker, and to what degree those findings should drive the sentence."
> <u>U.S. v. Pimental</u>,167 F. Supp. 2d 143, 144 (2005).

## B. STANDARD OF PROOF FOR EVALUATING FACTS POST-BOOKER

Had the issues of role in the offense and use of minors been submitted to a jury, as required under current law, the jury's finding would be subject to the standard of proof beyond a reasonable doubt. The trial court's findings regarding these factors made no reference whatsoever to any standard of proof. There was no finding by clear and convincing evidence. There was not even a finding by a preponderance of the evidence. Cf. "...the sentencing court considered as significantly bearing on its ultimate determination several aggravating factors which it found the trial record established by clear and convincing evidence, or at a minimum by a preponderance of the evidence." United States v. Santiago at 314. While there is some authority that "judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives Booker, United States v. Garcia, 413 F.3d 201, 202 n.15 (2d. Cir. 2005), the trial court made no such finding in the Defendant's case. It would make a mockery of Booker/Fanfan and Crosby if the court, upon re-sentencing were simply to couch its standardless findings in the language of 18 U.S.C. Sec. 1553(a) and determine, once again, that the defendant had a level 3 leadership role in the conspiracy and that he was responsible for the use of minors in the drug selling operation.

### C.    18 U.S.C. Sec. 3553(a) FACTORS
### MUST BE APPLIED IN RE-SENTENCING

The Defendant reasonably expects that after re-sentencing he will receive a lengthy prison term to serve.  He submits that a term of imprisonment significantly short of life without release will serve the purposes of 18 U.S.C. Sec. 3553(a).  Those purposes include the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  There is no evidence that a sentence without the possibility of release serves those purposes better than does a sentence of twenty years. Beyond that period of time, the sentence is serving merely to warehouse the inmate and to "keep him off the street." Neither function is appropriate under 18 U.S.C. Sec. 3553(a).  The only one of the four classic justifications for punishment, "just deserts, deterrence, incapacitation, and rehabilitation," U.S.S.G. Chap. 1, Part A(2) (1987), United States v. Taveras, 2006 U.S. Dist. LEXIS 10602 (March 16, 2006) served by a sentence of life without the possibility of release is incapacitation. Such a sentence is disproportionately harsh for the Defendant who has been convicted of participation in a heroin conspiracy. He was not charged with murder or attempted murder, he was not charged with assaulting anyone.

7

Where there is a perceived need to "protect the public from further crimes of the defendant," upon release from nearly any reasonable sentence he will be many years older than he is today. See United States v. Carmona-Rodriguez, 2005 U.S. Dist. LEXIS 6254, at *10-11 (S.D.N.Y. Apr. 11, 2005) (Sweet, J.) Age upon release is a strong predictor of future criminal activity. See Simon v. United States, 361 F. Supp. 2d at 43; United States v. Nellum, 2005 U.S. Dist. LEXIS 1568, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005); see also United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines at 28 (2004).

### D. DRUG ADDICTION CAN NOW BE TAKEN INTO CONSIDERATION FOR SENTENCING PURPOSES WHEN EVALUATING THE DEFENDANT'S CHARACTEREISTICS

Under 18 U.S.C. Sec. 3553(a)(1) "the nature and circumstances of the offense and the history and characteristics of the defendant" are factors which the court "shall consider" in sentencing. The trial court is well aware of testimony by government witnesses regarding the Defendant's severe and incapacitating heroin addiction. Because the Guidelines were mandatory when the Defendant was sentenced in 2002, the court could not consider his drug addiction and family background. Despite overwhelming testimony from government witnesses that the Defendant was "sick" from his heroin habit and was not trusted by the members of the organization because they believed he would divert "product" (i.e. heroin) to his

own personal use, the sentencing court was constrained by the Guidelines and could not recognize the debilitating influence of his drug habit.

Government witnesses, including his own brother Kingpin Frank Estrada testified that the Defendant grew up in a home dominated by drug use, abuse, sales, and profiteering. There was testimony at trial that the Defendant's father was a heroin addict in Brooklyn, New York, before the family moved to the supposedly safer turf of the P.T. Barnum housing project in Bridgeport. The place was crawling with drug dealers of competing gangs. The court has heard extensive testimony regarding his brother Frankie's brutality in controlling the "Estrada Organization," which sold heroin and crack to the destitute population of Bridgeport.

Throughout the trial, government witnesses testified about the Defendant's heroin addiction. They said that, because of the addiction, he stole heroin from his brother's drug organization. He was tolerated only because his brother Frankie was feared by everyone else. Government witness Nelson Carrasquillo testified the Defendant was so sick from his heroin habit that Carrasquillo bought illegal methadone on the street in downtown Bridgeport to relieve the Defendant's sickness. The PSR noted that the Defendant was "...at times handicapped by his severe addiction to heroin." (PSR, par. 90).

During his 2002 sentencing, the Defendant moved for downward departure under U.S.S.G. Sec. 5K2.0, 18 U.S.C. Sec. 3553(b) and United States v. Koon, 518 U.S.

81, 1996. He urged the court to downwardly depart based upon his extreme heroin addiction. At sentencing, the court noted "there was very clear testimony that your drug addiction affected your behavior, especially in the period following March, 2000, but the guidelines discourage that factor..." (9/9/02 Tr. 35)

At the time of sentencing in September, 2002, the Guidelines prohibited a downward departure based upon drug abuse. "Drug or alcohol abuse is not a reason for a downward departure." U.S.S.G. Sec. 5K2.0(d)(1). At that time, the Guidelines were mandatory. Since the <u>Booker</u> decision of January 12, 2005, the Guidelines have been discretionary. Surely the extreme level of the Defendant's heroin addiction, while not excusing his criminal behavior, qualifies for a downward departure. After <u>Booker</u>, the Guidelines are no longer mandatory <u>U.S. v. Fanfan</u>, 543 U.S.    , 160 L.Ed.2d 621, 122S.Ct. 738 (2005). In the "remedial opinion in <u>Booker</u>, the remedial majority specifically instructed judges to maintain 'a strong connection between the sentence imposed and the offender's real conduct."

### E.  THE NEED TO AVOID UNWARRANTED SENTENCE DISPARITIES <u>REQUIRES A SENTENCE OF LESS THAN LIFE WITHOUT RELEASE</u>

The sentence of life without release is greater than necessary and thus fails to comply with the sentencing purposes of 18 U.S.C. Sec. 3553(a). Under 18 U.S.C. Sec. 3553(a)(6), the court is directed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." It is, candidly, nearly impossible to compare the records and

sentences of convicted members of the Estrada Organization. A few co-defendants had no prior criminal records. Some had records for significant criminal activity. Many co-operators have presumably had the benefit of downward departures under "5K" letters from the government., pursuant to U.S.S.G. Sec 5K1.1 The most vociferous co-operators, co-defendants Frank Estrada and William Rodriguez aka Billy Gomez, aka Billy the Kid, both of whom whom plead guilty in 2002, have not yet been sentenced. No comparison is available. However, the Defendant's role in the heroin conspiracy was limited because of his addiction which made him unable to function much of the time. He was not charged with assault or murder.

In the District of New York, the trial court rejected the defendant's grounds as sufficient justifications for re-sentencing in a case where he had received a sentence of 600 months (50 years) after being convicted of murdering two individuals, being the manager and "enforcer" of a violent drug conspiracy. <u>United States v. Santiago</u>, 413 F. Supp. 307; 2006 U.S. Dist. LEXIS 4599. No such convictions or charges were brought against this defendant. It is unwarranted to sentence him to life without release when that punishment is, or should be, reserved for the most violent offenders.

## II.   THE DEFENDANT'S ALLEGED BAD ACTS ARE IRRELEVANT
##       TO SENTENCING FOR HIS CONVICTION
##       IN THE BRIDEPORT HEROIN CONSPIRACY

In Crosby, the Second Circuit remanded to the district courts all cases pending on appeal prior to Booker for sentencing reconsideration in light of the rulings in Booker and Crosby. "The Court of Appeals directed the district courts to hear both sides address any aggravating or mitigating considerations that the judges could not properly weigh before Booker, and to determine, *based solely on the circumstances that existed at the time of the original sentence, (emphasis added)* "whether to resentence, now fully informed of the new sentencing regime, and, if so, to resentence." Crosby , 397 F.3d at 117 cited by United States v. Santiago, 413 F. Supp. 307 (2006). Crosby itself leaves open the question of whether post-conviction behavior can be considered by the court during a re-sentencing pursuant to a Crosby remand. "If, based solely on the circumstances that existed at the time of the original sentence, the sentencing judge decides to resentence, the judge will have to consider the issue of what current circumstances are to be considered, an issue upon which we express no views at this time." Crosby, fn. 19.

There does appear to be guidance in the Santiago decision, supra. The Santiago Court approvingly quoted from Crosby at 112, which construed the remedial holding of Booker to allow the sentencing judge to find "all facts relevant" to the sentencing. The conspiracy alleged in the Indictment under which the

12

Defendant was convicted under ended on November 20, 2000. It alleged activities of the Defendant which took place in the District of Connecticut. The activities alleged in Lewisberg Penitentiary took place in the State of Pennsylvania during 2003. Those activities, if proven, would be separate conspiracies. The government cannot make the latter activities relevant to sentencing for the former simply by saying, "They involve heroin; they involve Eddie Mercado."

The Guidelines do not address alleged post-sentencing bad acts. The Defendant's re-sentencing may present an issue of first impression. In contrast to United States v. Pimental, 367 F. Supp. 2d 143 (2005), infra, which considers how acquitted conduct is to be treated during re-sentencing, the government seeks to impose additional punishment for post-sentencing conduct which was never considered by the jury or the sentencing judge at the original sentencing in 2002.

A.    ALLEGED CRIMINAL ACTIVITY AT LEWISBERG PENITENTIARY

The day before the Defendant's October 14, 2005, remand hearing, government counsel notified the Defendant's attorney that it intended to present claims of alleged "narcotics trafficking " by the Defendant at Lewisberg penitentiary ("Lewisberg") where he had been housed from late 2002 to early 2005. At the start of the Crosby remand hearing the following day, government counsel began by waiving a sheaf of papers while proclaiming, "These are disciplinary reports from Lewisberg (Penitentiary)." Much of the material presented consisted of disciplinary notes and

13

reports by prison guards. The claims stemmed from alleged activities more than two years before the hearing. The reports charged the Defendant with "drug trafficking" and possession of heroin at Lewisberg in early 2003. The alleged offenses had occurred during the period when the 30-year old Defendant was adjusting to the reality of his life time sentence. The hearing was adjourned to permit Defendant's counsel to investigate the claims.

These claims have never resulted in criminal charges against the Defendant, either in state court in Pennsylvania or in any federal court. He was disciplined for them at USP-Lewisberg in 2003. The Defendant, an acknowledged heroin addict for many years, admits to using heroin while at Lewisberg. He adamantly denies trafficking in drugs there.  Co-defendant Edwin Mercado, also accused in the Lewisberg incidents, again confirms the Defendant's extreme heroin use and their personal use of heroin at Lewisberg. (ATTACHMENT B, Statement of Edwin Mercado, April 6, 2006).

## III. DEFENDANT REITERATES HIS EARLIER ARGUMENTS ON REMAND

### A.. DRUG QUANTITY

The Indictment charged the Defendant with conspiracy "to possess with intent to distribute and to distribute 1,000 grams or more of a mixture and substance containing a detectable amount of heroin." Using the verdict form drafted by the government and adopted by the court, the jury determined the Defendant was guilty

of conspiracy to possess with intent to distribute, and to distribute 1,000 grams or more of heroin. According to the United States Sentencing Guidelines, Section 2D1.1(c)(4) the base offense level for sentencing guideline purposes is Level 32. In the PSR, the Probation Officer assigned a base offense level of 38 for participation in a drug conspiracy involving the distribution of more than 30 kilograms of heroin. (PSR par. 39). Based on its own fact finding and that of the Probation Officer, not the jury, the trial judge increased the Defendant's base offense level to 38. Such a judicial determination is now clearly erroneous under Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely, Booker, Gonzalez , and Cordoba-Murgas.

The Second Circuit has confirmed that, "[we have] recognized the addition of a drug quantity element to a Section 841(a) offense to result in a different criminal charge from the same offense pleaded without regard to quantity." United States v. Cordoba-Murgas, supra, citing United States v. Gonzalez, No. 03-1356, 2005 U.S. App. LEXUS 17961, at *31 (2d Cir. Aug. 22, 2005). Defendant Cordoba-Murgas was charged with distributing an unspecified amount of cocaine. He plead guilty to distribution of 15 to 50 kilograms of cocaine for which he was sentenced to 262 months, in excess of the 240 month maximum under Sec. 841(b)(1)(C)which applies to unspecified quantities. The Second Circuit relied on Apprendi and its own decision in United States v. Thomas, 274 F.3d 655 (2d Cir. 2001) which held that "if the type and quantity of drugs involved in a charged crime may be used to impose a sentence

above the statutory maximum for an indeterminate quantity of drugs, then the type and quantity of drugs is an element of the offense that must be charged in the indictment and submitted to the jury." Thomas at 660.

In the instant case, the Indictment charged 1,000 grams "or more" of heroin. Here, "or more" represents an indeterminate quantity, which was never charged in the indictment or found by the jury. The Probation Officer and the Court decided that the heroin quantity involved was 30 kilograms or more. Such a determination cannot stand under Apprendi, Thomas, Gonzalez, and Cordoba-Murgas. The Defendant should be re-sentenced, using a base offense level of 32, the level for the 1,000 grams found by the jury.

### B)     CRIMINAL HISTORY COMPUTATION = Category V

The PSR improperly characterizes two of the Defendant's prior offenses as "crimes of violence." Both involved possession of a weapon in an institution. Both occurred when he was 21 years old. In each case he had a metal "shank" for his own protection while in Connecticut state prisons. (PSR. Pars. 52 and 53) Neither meets fits the definition of a crime of violence under U.S.S.G. Sec. 4B1.2(a) Application n.1. There is no indication that either offense "had as an element the use, attempted use, or threatened use of physical force against another person." It is particularly instructive that Application n.1 specifically says "Crime of Violence" does not include the offense of possession of a firearm by a felon, except under special circumstances.

Since neither of the weapons charges should be counted as a "Crime of Violence, the Defendant should not be categorized as a Career Offender. His revised Criminal History Category should be Category V.

### C) FIREARMS ENHANCEMENT

The Defendant understands that under a strict reading of <u>Apprendi</u> and related cases he has conceded the firearms enhancement. However, he believes this factor should not be counted for purposes of re-sentencing. Following the advice of counsel, the Defendant did not contest the Probation Officer's finding that "a 2-level increase is warranted pursuant to U.S.S.G. Sec. 2D1.1(b)(1)because the defendant possessed  firearms in connection with the instant offense." (PSR par. 40). Then-existing law did not require a jury finding that the firearms enhancement had been proven beyond a reasonable doubt. Counsel and the Defendant believed that conceding the enhancement would lend credibility to their other sentencing arguments. Under current law, neither would waive the jury's obligation to make that finding. This issue is not a matter of deciding, in hind-sight, that a tactical error was made, but is an analysis under current law.

### IV. SENTENCING ON REMAND

Since January 5, 2005, the sentencing guidelines have not been mandatory. although they are advisory and must be considered by sentencing courts. Under <u>Booker</u> and <u>Crosby</u>, the factors set forth in 18 U.S.C. 3553(a) are to be applied in

order to impose a sentence "sufficient but not greater than necessary" to achieve the

purposes of sentencing considering:

    (1) The nature and circumstances of the offense,
       the history and characteristics of the Defendant;
    (2) the need for the sentence imposed to:
      (A) reflect the seriousness of the crime, to promote
         respect for the law, and to promote jus punishment
         for the offense;
      (B) to afford adequate deterrence to criminal conduct;
      (C) to protect the public from further crimes of the defendant; and
      (D) to provide the defendant with educational or vocational training,
         medical care, or other correctional treatment.
    (3) The kinds of sentences available;
    (4) The sentencing guidelines and (5) policy statements;
    (6) The need to avoid of unwarranted sentencing disparity; and
    (7) The need for restitution to victims.

    The Second Circuit noted in Crosby that, because sentencing guidelines are no

longer mandatory, the  district courts have the authority to impose non-guideline

sentences. <u>Crosby</u> at 112.

    The Defendant urges this Court to impose a non-guideline sentence when the

Defendant is re-sentenced pursuant to the <u>Crosby</u> remand. He should be sentenced

within the statutory sentencing range of 10 years to life pursuant to 21 U.S.C Sec.

841(b)(1)(A) for the crime of which he has been convicted by the jury.


## V. <u>LIFE WITHOUT RELEASE IS HARSHER THAN APPROPRIATE</u>

    The facts of this case do not call for a sentence of life without release. Such a

sentence should be reserved for the most heinous criminals. The Defendant, despite

his participation in the drug organization and his lengthy criminal record, was not charged with or convicted of with crimes of individualized physical violence such as murder or kidnapping. The court's job is to create a sentence which is sufficient but not greater than necessary in order to meet the purposes of sentencing for specific deterrence, general deterrence, incapacitation, and rehabilitation. Under an advisory scheme of sentencing pursuant to Booker, supra, a sentence of life without release is harsher than necessary.

The Defendant took responsibility for his actions during his sentencing hearing on September 9, 2002. He apologized to the victims of his crimes of heroin distribution and to their families. He apologized to his own family and friends. He explained that his mind had been clouded by drug use during the years of the conspiracy. He apologized for the mistakes he made.

For the past year he has been housed at the Donald W. Wyatt Detention Center (FDC-Wyatt) in Central Falls, Rhode Island. Although that pre-trial facility has few educational courses available, he has taken advantage of those available to him. Attached are letters and evaluations from Elizabeth Folcarelli, Taton Learning Institute, April 25, 2006 (ATTACHMENT C); June Carlton, Case Manager, Cornell Companies, Inc. (FDC-Wyatt) (ATTACHMENT D); Certificates of Completion, Alternatives to Violence (ATTACHMENT E); Substance Abuse Awareness and Anger Management, (ATTACHMENT F); and (ATTACHMENT G). Refer also to his

submissions attached to his Memorandum in Support of Re-Sentencing pursuant to

Crosby Remand on September 13, 2005.),

## C O N C L U S I O N

For all the above reasons, the Defendant requests that he be re-sentenced

within the range of 120 to 150 months in accordance with presently operative law.

Respectfully submitted,
DEFENDANT, EDWARD ESTRADA,


BY _Margaret P. Levy_
MARGARET P. LEVY
Federal Bar No. ct00045
His Attorney
21 Oak Street
Hartford, CT  06106-8001
(860) 525-9119

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed, postage prepaid, or was hand-delivered, this day, to:

Hon. Stephen R. Underhill
United States District Court
915 Lafayette Boulevard
Bridgeport, CT 06604

Alina Reynolds
Alex V. Hernandez
Assistant United States Attorneys
915 Lafayette Boulevard
Bridgeport, CT 06604

Edward Estrada
Reg. No. 60392-053
FDC-Wyatt
950 High Street
Central Falls, RI 02863

_Margaret P. Levy_
MARGARET P. LEVY